Thank you, Your Honor. Thank you for your support. Mr. Chavez, I represent plaintiff Philly in the heart of Sonoma City. My client, Mr. Chavez, was held for 65 days in jail without ever seeing a judge. Pertaining to his parole status, is that true? I thought that two days after he was incarcerated, he was taken before a Superior Court judge. He was taken before a Superior Court judge on the marijuana charge, a separate criminal case, which was based on the same facts underlying the parole hold and violation. But the criminal case on the marijuana charge, that court had no jurisdiction over the parole. Regularly, he could have raised the question and said, I'm not, they got me here under false pretenses. He could have done that right then. Actually, I respectfully disagree. He could have said it, but the judge, he was represented by a lawyer in that proceeding. He was represented by a lawyer in that proceeding. He was. He was represented by me. He was represented by me, and if I told the judge, I thought that was definitive, or it's not going to be definitive. It may have been the first years or two, I don't recall at this point. At some point, he was represented by me. He had a chance to see a judge, and he had a chance to see a judge by myself. He had a lawyer representing him. He was arraigned on a marijuana case? I don't know that, but he was a lawyer. He didn't tell the court, by the way, I should be in jail, and I don't have a parole hold. Is that what he said? No public defender, but knows a lot, would raise the bullet. He could leave a parole hold at an arraignment on a marijuana case. Parole issue is not before a superior court judge until after a number of things have to happen. They have to go through a parole, alleged parole violator has to go through a parole violation hearing and exhaust his remedies before he has the opportunity to go to court. Before then, the court has no jurisdiction. Absolutely no jurisdiction. He could have raised it over and over, and the judge would have said, there's nothing I can do. I'm sorry. After 65 days. He went through a parole violation hearing, and about three weeks later, actually the DA informed the court that he'd been called by parole and told that they've lost jurisdiction. They didn't have jurisdiction over Mr. Chavez. So that's before he's arrested. All of these deputies that we've gone through, they are referred to the DA, right? Yeah. He didn't have the legal ability to raise the validity of the parole hold until after he exhausted the parole administrative process. Before that point, no judge ever reviewed validity of parole hold. No judge ever did. But isn't it the case that 23 days after he was initially arrested, he did go to the parole board, and they determined they had authority to hold him? Right. They did. It was his name, apparently. It was his name. He still had the procedural protection, didn't he? He did. The parole board is not made up of judges or even lawyers. It's the parole officer who holds a hearing on the alleged violation of parole. Only after that point does he have the ability to prepare and file a petition for renegadious purpose. So what is your position as to what the county defense is? I guess we have a federal health attorney, so, and who is the district attorney, right? What is your position as to what legal obligation did they have on the DA to undertake it? I'm sorry, I didn't hear anything. I didn't hear anything since the first interview. On appeal, you did not raise these allegations. Well, I raised the validity of the constitutional objections in Juneau County Constitutional Amendments Agreement. That challenge is under Juneau. It's an issue of the state of the county. I believe I did, Your Honor. And so we were in your views. We allege that the jail, that he wasn't the person who was held as a parole violator and was not mistakenly by the jail and that the sheriff, the head of the jail, the county official, the head of the jail, knew that more than one, we see it in the head of the district attorney, we didn't hear anything. We didn't know what the obligation was. I didn't expressly, I guess I didn't expressly address it as the Monell issue when I attempted to raise it, though, Your Honor, because this was granted as a 12D6 motion. Unlike Rivera, the undisclosed main precedent on the issue, which was disarming judgment, all these facts have been fleshed out. At this point, the only thing the administrative judge had before was the complaint. And we alleged that my client repeatedly told the jail that he wasn't on parole and that the jail had, on more than one occasion, mistakenly held people as parole violators when they weren't on parole and that the sheriff was aware that the jail mistakenly held, on more than one occasion, mistakenly held people as parole violators when they weren't on parole and failed to implement appropriate policies to prevent that. I don't think anything more is required at the pleading stage. Whether or not we can ultimately prove it through trial or fact is a different question. And did you raise the issue of qualified immunity? I did not raise the qualified immunity issue for this court, Your Honor. I didn't think it was necessary at this stage. We're not at the summary judgment stage. We're at the 12D6 stage. The court dismissed my client's case, saying the complaint was insufficient. The court mistakenly said that we didn't plead several things that we, in fact, did have pleaded, which should have been enough to allow our case to go forward. We don't have to plead to prove it's a case. We just have to plead enough to make a plausible claim. Mr. Chavez believes that he has a state of a plausible claim and I would like to reserve a couple minutes for rebuttal if the court doesn't have any further questions at this point. Good morning, Your Honor. We thank the court and the group and several other contacts in OMA and the chair, Steve Freitas. I will contemplate several points that I would like to respond to in more detail. But first, I would like to address the reasons why the respondents asked this court to defer. Of course, Your Honor. First, I would like to address why the respondents asked this court to defer and the district courts to dismiss of the case and why Mr. Chavez cannot heal the deficiencies of the First Amendment complaint by amendment. There are certainly no facts that he could allege, did allege, or could allege to state the required elements for a constitutional due process claim. Mr. Chavez is suing the county of Sonoma and the sheriff for an election mistake that happened at the state level and based on Mr. Babcock's statements, it is clear to me that he seems to be challenging how the parole system works and says there were some errors somewhere in the parole system, but again, that is a state function. It is not the county's or the sheriff's responsibility to administer parole. Yet, somehow, Mr. Chavez thinks that the county defendants have some... Well, but there's a clause, suppose the parole of a person is sued. That person is sentenced yesterday and put into the county jail, right? Now, what's the other person become? Is it, you know, just because we're in the county jail, doesn't mean the sheriff has some responsibility to administer the First Amendment? I mean, well, you know, I'm here on a parole, but I'm not even on parole, but the sheriff has some responsibility based on his verdict. So, certainly, based on the clear and established clause, this would be the brief in our case that counsel mentioned from the Ninth Circuit. The law says that unsupported claims, unthrown complaints of an inmate while he's incarcerated to the jail by themselves do not trigger a duty to investigate. That's especially true if that inmate has access to the courts or some other procedural safeguards. In this case, even assuming that Mr. Chavez would have explained or complained to the jail staff that he was not a defendant on parole, the facts and circumstances of this case really show that he had plenty of opportunity to raise those issues with the actual appropriate authorities, which is the state. He was brought before the Superior Court judge on two occasions. He had the attorney present... But do you know what happened when he was brought before the Superior Court judge? Excuse me? Do you know what happened when he was brought before the Superior Court judge? The court minutes reflect that a no-parole hold, a parole hold was issued, was gated in the court minutes. So the Superior Court, at some point, was aware of that. If there was any discussion about his parole status, I do not know that. I don't have the information. So there was a different charge on this? It was local criminal charges or drug charges, correct. But at the same time, Mr. Chavez went to two parole court hearings while he was incarcerated. He was in the first 13, and held for 23 days. I think he had the first hearing in early December, December 7, and then the second one on December 10. Yes, that's true. He was held for 23 days. I'm surprised you didn't know this. I mean, just a few years ago. For all you know. In general, he was in jail for 23 days. Sure. Number one, he did have a parole hold. State had issued for him to hold until he was 13 and notified by the parole board. So there was a valid, basically valid parole hold in place for him. At the same time, he was charged and incarcerated on local drug charges. He had not posted bail until he actually was released from jail in January. But he didn't post bail as long as there was a parole hold, right? That's correct. That's correct. He was held on a valid, basically valid parole hold. And ultimately, on December 21, 2012, the parole board revoked his, he found him in violation of his parole, he revoked his parole, and at that time, he sentenced Mr. Chavez to serve time in county jail. So that decision really forecloses any argument by Mr. Chavez that there was further investigation warranted by the jail staff because... So what's the theory here? Somebody can be filled on an erroneous basis. They protest constantly. They are correct. But everybody along the line for the government makes a mistake. And then when they finally figure out there was a mistake, would you say, well, I'm sorry, that's the way things work? I mean, why doesn't he have a claim? Because, again, the parole is administered by the state. He may have had a claim against the state. He didn't raise a claim against the state. He sued the county. The county, again, had the parole board. He provided access to Mr. Chavez on several occasions to raise his issue of the parole with the appropriate authority. Now, there's no indication in the record, there's no allegation by Mr. Chavez that he ever raised that point to the superior court or to the parole board hearing where he could have. He didn't. There's no allegation there. There's a very vague allegation in his first amendment complaint that on more than one occasion, it doesn't specify the time, when or who or how he complained to anybody about this. He's just making a generic allegation that he did. But based on the circumstances that were available to the county jail at the time, they had no reason to not rely on the face-to-face parole board and then on the decision of the parole board hearing. There's a big causation issue here. Even if, assuming further purposes of this motion, that Mr. Chavez would have complained to the jail and they would have further investigated, the investigation would have led them back to the state because it's the state who administers parole. So, they would have called up them, they had the documentation. Ultimately, they would have seen the parole board. You know, whoever was in jail or whoever county agent was, of course, they eventually found out that the state made a mistake that there was no parole board. So, and Mr. Wackow, she's mentioned that the district attorney's office received a call from the parole agent. So, who was that? Any institutional county employee of the state that made the call? Absolutely correct. Absolutely correct. It was the state who, at some point, recognized their mistake. All the district attorneys. I think the county had all of those procedures in place because they have the procedures in place to allow... What's the procedure? To allow... The state parole board that they're allowed to say yes and that's everything. Well, it allows... It's not just their... In terms of their investigation. It allows... It has the procedures in place so the inmates can contact the appropriate authorities who make, ultimately, those decisions. But the county doesn't do anything. The county has those procedures in place and it has them readily available. What procedure? That's what I'm asking you. Right. They can file grievance forms, for instance, they get access to the courts if they want to talk to the courts, they get court hearing dates. In this case, he was brought before the parole board on two occasions to issue his claims. And I think that under Rivera, it's fairly clear that if you provide those two processes, possibilities, and access to courts, then an unsupported claim by an inmate is not sufficient to trigger another duty to investigate. And going back to, even if they would have, there's a causation issue in this case because, ultimately, it was the state who had the records, who held the records. And the county should not be held responsible for a mistake that happened at the state level for which they had no control. Are there any other questions?  Thank you. Thank you. Thank you. Just briefly, a couple of points, Your Honor. We alleged in our complaint that the jail actually had the authority to release persons in custody on parole if they determined the suspect wasn't, in fact, on parole. This statement... No, but what is that? They called the parole board or the parole office and say, we have a low-level person in this state that is mistakenly. That's all they have to do, right? The point I was trying to make, Your Honor, is parole doesn't have a separate jail. The entire process takes place within the county jail. The parole hearing is in the county jail. The parole officers go in and out of the county jail to do their business. The jail personnel are intimately and closely associated with the parole officers in the parole process. They... Ultimately, and so you go to court, and my client never had that chance to do his business. Had not that chance. He was held for 65 days and never saw a judge. No judge ever reviewed this. I know what's wrong. You can't sue the state. You cannot sue the state and the state of California on this issue. So... I may have a faulty memory about the record. Did your client say sometime around January 16th that he didn't know I was not on parole? He filed a claim. He filed a claim. If you look at it, your honor, he says both. First he says he was falsely imprisoned because a parole hold was unlawfully placed on him on or about November 14th. And then he says on or about January 16th he learned that he was not in fact on parole when he was arrested. So, it should have been  but he told the police the day he was arrested, I'm not on parole. And he told the jail, when he got to the jail, I'm not on parole. I know you got a parole hold on me, but I'm not on parole. He raised it at every stage. This would have made a difference. It should have made a difference. I mean, far as any other client, if you look at it, it exists in its own subgroup. It could be oriented. In this case, well, not in this particular litigation. There wouldn't have been any other litigation involving practice from people in jail. I'm not aware of any other cases involving the county of Sonoma or anybody for this whole detention community group. The original case was also claims were brought against the city of Del Loma and a couple of Del Loma police officers who were the ones who arrested him and searched his house based on their assertion that he was on parole. The court ultimately dismissed the criminal case on motion to suppress because finding that he was on parole. I know that it's a criminal case. There were no charges actually brought against him. I mean, there's nothing that you have with anyone that's filed a criminal litigation for consuming any clients against other people whose responsibilities are not criminal. No, Your Honor. This is your only remedy? This is his only remedy, yes. You can't sue the state parole officers and the state court and the state attorney plaintiff? No, I believe all the state officials have a duty. All right, thank you very much. Thank you, Your Honor. Okay.
judges: Reinhardt, Tashima, Molloy